| | |
|---|---|
| **THE TEXTING COMPANY LLC. d/b/a Textedly.com and Textedly,** | )<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | )<br>) |
| **TEXTLA LLC, LUCAS BRICKMAN, as an officer of Textla and in his individual capacity, JOHN or JANE DOE 1, and JOHN or JANE DOE 2,** | )<br>)<br>)<br>)<br>)<br>) |
| **Defendants.** | )<br>)<br>) |

Case No. _____

**JURY DEMAND**

## COMPLAINT

Plaintiff The Texting Company LLC d/b/a Textedly.com ("Textedly"), by and through its undersigned counsel, brings the following Complaint against Defendants Textla LLC ("Textla"), its Chief Operating Officer, Lucas B. Brickman ("Brickman"), and unknown JOHN and/or JANE DOE 1 and JOHN and/or JANE DOE 2, (collectively "Defendants"), and alleges as follows:

### INTRODUCTION

1. Textedly is a SMS text messaging software platform used by businesses across the country to send marketing text message alerts, sales events, coupons, notifications, and appointment reminders to their customers. As described below, Textedly brings this action against Defendants who have stolen the business-critical, confidential contact information of nearly 30,000 customers and users of Textedly (hereafter, the "Textedly Data") for Defendants' own use in an attempt to establish itself as a direct competitor to Textedly. Textedly has invested multiple millions of dollars and untold hours of labor and nonmonetary resources in developing, acquiring,

maintaining, and protecting the Textedly Data, and Defendants illegally acquired the Textedly Data by covertly and unlawfully stealing it from Textedly's service provider.

2. As detailed below, Defendants unlawfully misappropriated the Textedly Data when certain high ranking personnel of Defendant Textla, including Defendant Brickman and Defendants John or Jane Doe 1, and John or Jane Doe 2, (collectively "Defendant Textla's Officers") worked at Twilio Inc. ("Twilio"). Twilio is a cloud-based provider of direct marketing communications and related marketing services to both Textedly and Textla. On information and belief, while at Twilio, Defendant Textla's Officers had the ability to access the Textedly Data from Twilio's systems. In a blatant abuse of those access privileges, Defendant Textla's Officers recognized that the Textedly Data could help establish Textla as a direct competitor to Textedly and stole the Textedly Data from Twilio without the authorization of Twilio or Textedly. The stolen Textedly Data was used to form and build a user base for Textla, an inferior but similar text messaging software platform.

3. Rather than build their own user base from scratch like Textedly did over the course of many years, Defendants took a short cut—they unlawfully obtained the Textedly Data and used it to contact and solicit Textedly's customers in an attempt to introduce them to Textla as a direct competitor, persuade them to stop using Textedly, and to sign up with Textla instead. Defendants did all of this covertly, without notifying Twilio or Textedly.

4. Defendants undertook this activity secretly, allowing it to build its own business without the knowledge of Textedly or Twilio. For example, Defendants undertook significant steps to avoid Textedly's detection of its misdeeds, such as, on information and belief, manually removing all email addresses that appeared to be associated with Textedly from the Textedly Data. Textedly only discovered Defendants' theft when Defendants used the Textedly Data to send

marketing communications to email accounts that had been created by Textedly for testing purposes.

5. The service contracts between Textedly and Twilio require that Twilio be able to access and store the Textedly Data on its system. However, the Textedly Data is not publicly available and is protected by stringent security, privacy, and confidentiality safeguards.

6. Textedly has worked diligently to develop its reputation and the Textedly Data over several years. Textedly created the Textedly Data through a substantial investment of time, effort, and money, and was protected and kept secret by Textedly through significant measures. The direct enterprise communications space that Textedly operates in depends on a company's ability to generate and serve customers. The Textedly Data is a compilation of tens of thousands of email addresses for business contacts at enterprises who purchased Textedly's unique and highly specialized services, expressed an interest in doing so, or who are otherwise highly likely to do so. Prospects with the correct combination of job responsibilities, authority, budget requirements, technological needs, and interests are extremely difficult to locate. Developing this list was only possible after Textedly had invested years of time and millions of dollars. Yet, in one unlawful act, Defendants were able to blast their own "Textla" branded marketing emails to these individuals, introducing all of them to Textla, informing them that Textedly had a direct competitor, and attempting to win their business.

7. While Textedly believes in robust competition, that competition must be fair and lawful. What Defendants did, however, was patently unfair, illegal, and harmful to Textedly: Defendants used Defendant Textla's Officers' positions at Twilio to misappropriate Textedly Data—data that contains a combination of trade secrets, as well as proprietary and confidential

information—and then used that information to jump start their new business and gain a competitive advantage over Textedly.

8. Defendants' conduct is a gross and direct violation of federal and state law. Defendants' misuse of the Textedly Data has caused material detriment to Textedly—including, but not limited to, obtaining ill-gotten profits, disrupting Textedly's existing business relationships with its customers, unlawfully obtaining Textedly's valuable trade secrets, harming Textedly's reputation, causing Textedly to devote additional time and financial resources to investigating this matter, preserving its customer relationships, and acquiring new customers.

9. Textedly, therefore, brings this action against Defendants for (a) unfair competition in violation of California Business and Professions Code Section 17200 *et seq.*; (b) inappropriate access and unauthorized taking of the Textedly Data in violation of California Penal Code Section 502(c); (c) knowing and intentional unauthorized Textedly's and/or Twilio's, on behalf of Textedly, computerized service in violation of 18 U.S.C. Section 1030; (d) misappropriation of trade secrets in violation of the California Uniform Trade Secrets Act ("CUTSA") Cal. Civ. Code Section 3426 *et seq.*; (e) trespass to chattels; (f) tortious interference with prospective economic advantage; (g) tortious interference with a contract; and (h) unjust enrichment.

## PARTIES

10. Plaintiff Textedly is a California Limited Liability Company doing business in the State of California. Textedly's principal place of business is in Los Angeles, California.

11. Defendant TEXTLA LLC (or "Textla") is a Texas Limited Liability Company doing business in the State of Tennessee. Defendant's principal place of business is in Chattanooga, Tennessee.

12. Defendant LUCAS B. BRICKMAN (or "Brickman") is the Chief Operating Officer and co-Founder of Textla. On information and belief, Defendant Brickman is a resident of Fort Worth, Texas. Defendant Brickman is a former employee of Twilio.

13. Defendant JOHN or JANE DOE 1 is a current or former employee of Textla who participated in, aided, or abetted Defendant Textla and Defendant Brickman in the conduct alleged herein. On information and belief, JOHN or JANE DOE 1 was also an employee of Twilio.

14. Defendant JOHN or JANE DOE 2 is a current or former employee of Textla who participated in, aided, or abetted Defendant Textla and Defendant Brickman in the conduct alleged herein. On information and belief, JOHN or JANE DOE 2 was also an employee of Twilio.

## JURISDICTION AND VENUE

15. This Court has personal jurisdiction over Defendant Textla because its principal place of business is in this District.

16. This Court has personal jurisdiction over Defendant Brickman because in Defendant Brickman's capacity as the Chief Executive Officer and Co-Founder of Textla, Defendant Brickman established sufficient contacts in this District: Defendant Brickman established Textla in this District, raised millions of dollars in capital from investors based in this District, and gave multiple media interviews holding himself out as based in this District.

17. This Court has personal jurisdiction over Defendants JOHN or JANE DOE 1 and 2 because on information and belief, Defendants are domiciled in eastern Tennessee.

18. This Court has subject matter jurisdiction over this action pursuant to 28 U.S. Section 1332 because Textedly and Defendants are diverse and the amount in controversy exceeds $75,000.

19. Venue is proper in this District under 28 U.S.C. Sections 1391(b) and (d) because Defendant Textla has its principle place of business in this District and a substantial part of the events giving rise to the claims occurred in this District.

## RELEVANT FACTUAL ALLEGATIONS

**A. Textedly's Relationship with Twilio.**

20. From early 2022 to the present, Textedly and Twilio have executed a series of service contracts governing the relationship (the "Twilio Agreements"). Through the Twilio Agreements, Twilio was to provide certain communications services for Textedly—specifically, to act as a conduit for delivery of text messages sent by Textedly users, and to send text messages over its telecommunications network.

21. The Twilio Agreements expressly incorporate Twilio's Terms of Service as governing the provision of services. The Terms of Service required Twilio to store the Textedly Data in a confidential manner. The Terms of Service expressly include customer lists in their definition of "Confidential Information," and provide that Twilio shall not use any Confidential Information other than to fulfill its obligations under the Twilio Agreements and will only make Confidential Information available to its employees on a "need to know" basis.

**B. Defendants Unlawfully Acquired the Textedly Data.**

22. Defendants unlawfully and secretly acquired the Textedly Data as a result of Defendant Textla's Officers' prior employment with Twilio, in violation of the Terms of Service governing the Twilio Agreements.

23. Upon information and belief, Defendant Textla's Officers were employed by Twilio beginning in early 2022 and continued until the termination of their employment on July 6, 2023.

24. Upon information and belief, Defendant Textla's Officers executed an employment agreement with Twilio as part of their employment. Further, upon information and belief, Defendant Textla's Officers acknowledged in their employment agreement that Twilio receives confidential or proprietary information (e.g., Textedly Data) from third parties (*e.g.*, Textedly) and they agreed to hold such information in confidence. Additionally, upon information and belief, Defendant Textla's Officers agreed to return all third party information or proprietary information, including copies, to Twilio upon termination of their employment, and Defendant Textla's Officers affirmed their continuing obligations even after termination of their employment.

25. While employed at Twilio, Defendant Textla's Officers had access to the Textedly Data for certain delineated purposes related to their employment with Twilio, or the means to access such data beyond their authorization, which allowed Defendant Textla's Officers to circumvent Twilio's and Textedly's existing protections of the Textedly Data, download the data, use it to form Textla, and secretly use it to steal Textedly customers.

26. Upon information and belief, Defendant Textla's Officers simultaneously worked to form Textla, the Textla platform, and perform services for Textla's benefit while still employed at Twilio. Upon information and belief, this was not permitted under the employment agreement with Twilio. Defendant Textla's Officers unlawfully obtained and used the Textedly Data for the purpose of creating Textla.

27. Defendant Textla's Officers eventually terminated their employment with Twilio to work full time with Textla and develop the Textla platform. Defendant Textla's Officers used the Textedly Data to gain a competitive advantage on behalf of Textla.

## C. The Type of Information Stolen.

28. Among the Textedly Data was the contact information for nearly 30,000 existing customers of Textedly, including customer names, email addresses, and phone numbers. This information was to be held confidentially by Twilio and used only for Textedly's benefit. Textedly does not make this information public. This information has enormous value to Textedly.

29. Defendant Textla's Officers knew, or in the exercise of due care should have known, of the prohibitions and precautions taken by Textedly with regard to the Textedly Data. Upon information and belief, not only did they appear in the employment agreement with Twilio, which Defendant Textla's Officers were required to, and did, sign; Textla is in the industry and likely takes similar precautions to protect its similar data. Perhaps most telling, Defendants' deliberate measures to avoid detection establish their understanding that the Textedly Data was protected: when it was time for Textla to send its own marketing communications to individuals whose contact information appeared in the Textedly Data, Defendants took measures to manually remove the email addresses in the Textedly Data that were likely to be viewable by Textedly, such as email addresses using a Textedly domain name.

## D. Defendants' Unlawful Acts of Acquiring and Using the Textedly Data.

30. Textedly eventually discovered Defendants' misappropriation and use of the Textedly Data roughly a year after the Defendant Textla's Officers left their employment at Twilio to work at and develop Textla. In particular, Textedly personnel created unique Gmail email addresses in order to sign up to Textedly's application test features inside the application. The test email addresses have never been used by Textedly for any other purpose. These test email addresses were embedded in the Textedly Data.

31. In or about May 2024, these test email addresses received direct marketing emails from Textla, as sent by email addresses from various domain names associated with Textla.

32. Upon information and belief, Defendants took deliberate measures to manually exclude from its marketing list any email accounts bearing the "@textedly.com" domain in an attempt to not tip off Textedly to Defendants' unlawful scheme. However, Defendants had no way of knowing that the Gmail test addresses set up by Textedly were also included in the Textedly Data. When Defendants sent its marketing emails, Textedly received them and began to suspect (and eventually uncovered) Defendants' unlawful scheme.

33. The emails sent by Defendants were designed to lure Textedly customers to use the Textla platform. Exemplars of Defendants' emails to the aforementioned test email addresses and a sample list of email addresses used by Defendants are attached hereto as Exhibit A.

34. Defendants used the Textedly Data to target Textedly's customers, directly advertise to (and ultimately lure away) Textedly's customers to use Textla's inferior text messaging platform, solicit their business, and otherwise disrupt Textedly's existing business relationships with its customers. Defendants' misconduct as described herein was willful and intentional, not merely negligent. Indeed, Defendants' goal was to quickly build a customer base and lure away Textedly's customers by misappropriating the Textedly Data.

35. Following the discovery of Defendants' wrongful acts, Textedly took immediate steps to investigate the situation, contact Textla to recover the stolen documents and information, and work with Twilio regarding the incident. Despite these extensive efforts by Textedly, Defendants have failed to offer an acceptable resolution for their misconduct.

36. Textedly conducted and continues to conduct internal investigations (at its expense) to determine the scope and magnitude of the harm that Defendants caused and continue to cause.

Textedly determined that it could not delay longer and that proceeding with this lawsuit was the only way to ensure protection of its trade secrets, confidential, and/or proprietary information.

**E.    Textedly's Substantial Efforts to Protect the Textedly Data.**

38.    Textedly made substantial efforts to protect its trade secrets, confidential, and/or proprietary information, including the Textedly Data, from public disclosure and distribution. All allegations set forth above shall apply to each cause of action alleged below, and the allegations in each cause of action shall carry over to every other.

<strong><u>FIRST CAUSE OF ACTION</u></strong>

<strong>Violations of California Business and Professions Code § 17200 et seq.</strong>

<strong>(Unfair Business Practices)</strong>

38.    Textedly re-alleges and incorporates by references paragraphs 1 through 37 above as if fully set forth herein as if fully stated herein.

39.    California Business and Professions Code Section 17200 *et seq.*, prohibits acts of unfair competition, including any and all "unlawful, unfair or fraudulent business act or practice."

40.    Defendants' conduct as described herein constitutes "unfair" and "unlawful" business practices in violation of the unfair competition provisions of the Unfair Competition Law ("UCL"), as codified in California Business and Professions Code Section 17200 *et seq.*, including but not limited to the fact that Defendants have violated, and continue to violate, the "unlawful" prong of the UCL through it improper exploitation of the Textedly Data in violation of Labor Code Section 2860.

41.    Defendants would not have had access to the Textedly Data had the Defendant Textla's Officers not wrongfully obtained it while employed at Twilio. Defendants have violated,

and continue to violate, the "unfair" prong of the UCL through its improper access and use of the Textedly Data. The Textedly Data is critical to Textedly's business operations.

42. Defendants' conduct also constitutes "unlawful acts and practices" under the UCL through Defendants' violations of the California Consumer Privacy Act, Cal. Civ. Code Section 1798.100 *et seq.* ("CCPA"). Even though Textla collects personal information from California residents and is otherwise subject to the CCPA, Textla does not comply with the CCPA as to the Textedly Data. For example, Textla failed to disclose in its privacy policy or other notices at collection, at or before the time of collection, that it collects personal information from third party sources such as Twilio and Textedly, as is required by the CCPA. (*See, e.g.,* Cal. Civ. Code §§ 1798.130(a)(5)(B), 1798.110(c).)

43. Textedly suffered injury in fact and lost money or property as a result of Defendants' unlawful and unfair business practices.

44. WHEREFORE, Textedly prays for relief as set forth below.

## SECOND CAUSE OF ACTION

**(Violation of California Penal Code § 502(c), (e))**

45. Textedly realleges Paragraphs 1 through 44 of this Complaint and incorporates those paragraphs by reference as if fully stated herein.

46. Textedly alleges that Defendants knowingly accessed a computer system without permission and then altered, damaged, deleted, destroyed, or otherwise used data on that system (i.e., the Textedly Data, via Twilio's system), with the intent to defraud, deceive, or extort, or to wrongfully control or obtain money, property, or data, and without authorization, all in violation of California Penal Code Section 502(c) and 502(e). By engaging in the misconduct and other such wrongful acts as described above, specifically, inappropriately accessing, removing, replacing, and

absconding with the confidential and privileged documents, Defendants' knowing access to Textedly's and/or Twilio's computerized systems, programs, and/or data (as to Twilio, as maintained on Textedly's behalf) and unauthorized taking, copying, or making use of the Textedly Data to the damage and loss of Textedly.

47. Neither Textedly, nor Twilio on behalf of Textedly, consented to Defendants' wrongful acts.

48. By engaging in the misconduct and other such wrongful acts as described above, Defendants violated California Penal Code Section 502(c) and 502(e).

49. As a result of Defendants' wrongful conduct, Textedly has suffered, and will continue to suffer, damages in an amount to be determined at trial.

50. WHEREFORE, Textedly prays for relief as set forth below.

## THIRD CAUSE OF ACTION

### (Violation of 18 U.S.C. § 1030)

51. Textedly realleges Paragraphs 1 through 50 of this Complaint and incorporates those paragraphs by reference as if fully stated herein.

52. Textedly alleges that Defendants intentionally accessed a protected computer without authorization or exceeded its authorized access, thereby obtaining information or causing damage to the computer system, in violation of 18 U.S.C. Section 1030. Defendants' violation occurred by engaging in the misconduct and other such wrongful acts as described above, specifically, Defendants' knowing and intentional unauthorized access of Textedly's and/or Twilio's protected computerized systems, programs, and/or data (as to Twilio, as maintained on Textedly's behalf).

53. Defendants' unauthorized access to the Textedly Data caused damage and loss to Textedly of more than $5,000.

54. By engaging in the misconduct and other such wrongful acts as described above, Defendants violated 18 U.S.C. Section 1030.

55. As a direct and proximate result of Defendants' wrongful conduct, Textedly has suffered, and will continue to suffer, damages in an amount to be determined at trial.

56. WHEREFORE, Textedly prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

### (Violation of California Civil Code §§ 3426-3426.11)

57. Textedly realleges Paragraphs 1 through 56 of this Complaint and incorporates those paragraphs by reference as if fully stated herein.

58. Textedly alleges that Defendants' misappropriated the Textedly Data and Textedly's proprietary and confidential information in violation of the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code Section 3426 *et seq.*.

59. The information at issue, the Textedly Data, constitutes a trade secret, meaning that it has independent economic value from not being generally known to the public and Textedly took reasonable steps to maintain its secrecy. Defendants misappropriated that trade secret through improper means. Textedly suffered damages as a result of the misappropriation. Defendants acquired, disclosed, or used the trade secret at issue (the Textedly Data) without proper authorization, causing harm to Textedly. Textedly owned the trade secrets misappropriated by Defendants when Defendants wrongfully obtained the Textedly Data. The Textedly Data included Textedly's customers that were developed by Textedly over the years through a substantial

investment of time, effort, and money, and was protected and kept secret by Textedly through various measures.

60. Defendants intentionally and unlawfully acquired, accessed, and used the Textedly Data that Textedly carefully protected and that any reasonable business in the industry would carefully protect from disclosure to a competitor.

61. The Textedly Data that Defendants misappropriated derives independent economic value for Textedly because it is not generally known to, and not readily ascertainable through proper means by, any competitor.

62. Defendants were, or at very least should have been, aware at the time that they accessed and used the Textedly Data that the information contained Textedly's trade secrets. Defendants did not access or use the Textedly Data for any business purpose of, or benefit to, Textedly.

63. By having a customer list at its disposal without having to engage in the substantial steps to produce the list of its own, Defendants had, and still have, the ability to take Textla from a "startup" to a major competitor in the industry without expending anywhere near the amount of resources that were expended by Textedly in order to produce the Textedly Data. It is highly likely that Defendants will disclose and/or use Textedly's trade secrets, notwithstanding any denials of doing so to date.

64. As a result of the foregoing allegations, Defendants wrongfully misappropriated the Textedly Data and has placed Textedly at significant risk that it will use or disclose such information to its benefit and to the detriment of Textedly.

65. The foregoing actions by Defendants in wrongfully accessing and misappropriating the Textedly Data was intentional, knowing, willful, malicious, fraudulent, and oppressive.

Defendants actions as set forth herein constitute actual and threatened misappropriation under CUTSA, Cal. Civ. Code Section 3426 *et seq.*.

66. As a direct and proximate result of Defendants' unlawful actions, Textedly has been greatly damaged, has suffered irreparable harm, and will continue to suffer irreparable harm without relief from this Court.

67. If not directed by this Court to provide access to all relevant accounts, devices, and storage locations, and to refrain from using or disclosing the Textedly Data, Defendants will continue to benefit while Textedly continues to suffer irreparable harm, damage and injury.

68. As a direct and proximate result of Defendants' wrongful conduct, Textedly has suffered, and will continue to suffer, damages in an amount to be determined at trial.

69. WHEREFORE, Textedly prays for relief as set forth below.

## FIFTH CAUSE OF ACTION

### (Trespass to Chattels)

70. Textedly realleges Paragraphs 1 through 69 of this Complaint and incorporates those paragraphs by reference as if fully stated herein.

71. Textedly had and has a right to the Textedly Data, which is Textedly's property, whereas Defendants do not. The Textedly Data included Textedly's customers that were developed by Textedly over the years through a substantial investment of time, effort, and money, and was protected and kept secret by Textedly through various measures.

72. Defendants intentionally interfered with Textedly's right to the Textedly Data, without Textedly's consent.

73. As a direct and proximate result of Defendants' wrongful conduct, Textedly has suffered, and will continue to suffer, damages in an amount to be determined at trial.

74. WHEREFORE, Textedly prays for relief as set forth below.

## SIXTH CAUSE OF ACTION

**(Tortious Interference with Prospective Economic Advantage)**

75. Textedly realleges Paragraphs 1 through 74 of this Complaint and incorporates those paragraphs by reference as if fully stated herein.

76. Textedly had a reasonable business expectancy and ongoing relationship with its customers, as reflected in the Textedly Data. Textedly had a reasonable expectation in engaging in business with, and in earning revenues and profits in connection with its customers identified in the Textedly Data that Defendants misappropriated.

77. Defendants knew of Textedly's business relationship with its customers and business expectancy from the Textedly Data.

78. Defendants intentionally interfered with that expectancy by diverting existing and prospective customers through its theft and improper acquisition and use of the Textedly Data.

79. Defendants' misconduct was intentional, outrageous, and deceitful, and committed in reckless disregard of Textedly's legal rights.

80. As a direct and proximate result of Defendants' wrongful conduct, Textedly has suffered, and will continue to suffer, damages in an amount to be determined at trial.

81. WHEREFORE, Textedly prays for relief as set forth below.

## SEVENTH CAUSE OF ACTION

**(Tortious Interference With A Contract)**

82. Textedly realleges Paragraphs 1 through 81 of this Complaint and incorporates those paragraphs by reference as if fully stated herein.

83. At all times relevant to this action, Textedly engaged with its customers, as reflected in the Textedly Data, through binding contractual relationships.

84. These contractual relationships would have resulted or continued to result in economic benefits to Textedly absent Defendants' interference.

85. Defendants have or should have had knowledge of Textedly's engagement with its customers, as reflected in the Textedly Data.

86. Defendants intentionally interfered with the Textedly Data without justification, by among other things: (a) misappropriating the Textedly Data; (b) advertising Textedly's customers to use the Textla platform; and (c) soliciting Textedly's customer's business.

87. But for Defendants' interference with Textedly's relationships with its customers, Textedly would not have to devote additional time and financial resources to investigate this matter, preserve its customer relationships, and reach out to prospective new customers who were unlawfully solicited by Defendants.

88. As a direct and proximate result of Defendants' wrongful conduct, Textedly has suffered, and will continue to suffer, damages in an amount to be determined at trial.

89. WHEREFORE, Textedly prays for relief as set forth below.

## EIGTH CAUSE OF ACTION

### (Unjust Enrichment)

90. Textedly realleges Paragraphs 1 through 89 of this Complaint and incorporates those paragraphs by reference as if fully stated herein.

91. Defendants have been unjustly enriched at the expense of Textedly by the improper acquisition and use of the Textedly Data.

92. As a direct and proximate result of unjust enrichment by Defendants, Textedly is entitled to receive restitution of any and all benefits received by Defendants in connection with their receipt of Textedly Data in an amount to be proven at trial, plus accrued interest thereon.

93. WHEREFORE, Textedly prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Textedly respectfully requests that the Court:

1. For injunctive relief:

   (a) That Defendants identify all Textedly Data (hard copy or electronic) in its possession (and the possession of its agents, representatives, and/or attorneys) and any derivations, inferences, and other data output based fully or in part on the Textedly Data or created fully or in part using the Textedly Data ("Derivative Textedly Data");

   (b) That Defendants return all originals and copies of the Textedly Data and Derivative Textedly Data in its possession in hard copy form;

   (c) That Defendants permanently destroy all electronic copies of the Textedly Data and Derivative Textedly Data such that neither it nor any of its agents, representatives, and/or attorneys can access such electronic documents in any way (including, but not limited to, through the use of data recovery software or other forensic means), and Defendants shall provide a signed declaration under penalty of perjury from an independent third party provider attesting to same;

   (d) That Defendants provide an accounting to Textedly as to any third parties to whom it provided access to the Textedly Data and Derivative Textedly Data;

   (e) That Defendants (and its agent, representative, and/or attorneys) cease and desist from using or disclosing the Textedly Data and Derivative Textedly Data on a going forward basis;

(f) To the extent Defendants do not have in its possession any documents that must be identified pursuant to subsection (a), that Defendants provide a declaration signed by Defendants under penalty of perjury so stating; and

(g) That Defendants fully cooperate with a third-party forensic expert to analyze any electronic devices in its possession, custody or control to ensure compliance with this Paragraph.

2. Issue a complete judgment in Textedly's favor on Counts 1 through 8 above, inclusive;

3. Award monetary damages to Textedly in amounts to be presented at trial on all Counts;

4. Award Textedly its reasonable attorneys' fees and costs for this action;

5. Award Textedly punitive, exemplary and/or treble damages to the extent available under applicable law;

6. Award Textedly prejudgment and post-judgment interest on all Counts; and

7. Grant Textedly all other relief as this Court deems just and proper.

Date: February 21, 2025                    Respectfully submitted,

s/ Samuel F. Miller
STITES & HARBISON PLLC
SAMUEL F. MILLER (BPR #022936)
smiller@stites.com
401 Commerce St Ste 800
Nashville, TN 37219
Telephone: 615.783.2200
Facsimile: 615.782.2371

*OF COUNSEL:*
MANATT, PHELPS & PHILLIPS, LLP
A. PAUL HEERINGA*
pheeringa@manatt.com
151 North Franklin Street, Suite 2600
Chicago, IL 60606
Telephone: 312.529.6308
Facsimile: 312.529.6315
*\*Pro hac vice to be requested*

MANATT, PHELPS & PHILLIPS, LLP
BRANDON P. REILLY*
breilly@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: 415.291.7400
Facsimile: 415.291.7474
*\*Pro hac vice to be requested*

403479525.11